## John Meads and others,

### v.

## Willard Walker and others.

The act incorporating the Commercial Bank of Albany, appointed commissioners to receive subscriptions ; but made no provision for an excess of subscriptions beyond the capital stock. The subscriptions greatly exceeded the prescribed amount of capital stock : and the commissioners made large subscriptions for themselves, after an amount equal to the capital stock, had been subscribed by others  The commissioners proceeded 'o apportion the stock ; they wholly excluded the complainants and other subscribers ; they allotted shares of stock to themselves and others, as they thought expedient ; and they thus made a distribution of the stock, without observing any rule founded on rights acquired by subscription.

Where discretionary power is expressly conferred on subordinate agents, it must prevail ; and nothing less than fraud, will vitiate its exercise.

Where the power of such agents is raised by implication, it is subject to the supervision of law, both for fraud and for error.

A power to remove the excess of these subscriptions, results, by implication.  This power belongs in the first instance, to the commissioners ; and if they exceed their authority or violate private rights, then to the courts.

These commissioners are trustees ; and are subject to the principles which prohibit a trustee from exercising his trust for his own benefit.

Every subscriber acquired by subscription and payment, some right.

No method for the reduction of these subscriptions being prescribed, no particular rule for that purpose, is to be inferred ; but the exercise of the power to reduce, must be reasonable and equitable, and not merely arbitrary.

The rule for reducing subscriptions, established by the act of congress, in the case of the existing bank of the united states, is highly equitable.

The commissioners having in this case, allotted to themselves and their copartners, about two fifths of the capital stock ; and having wholly excluded the complainants; the distribution though not fraudulent, must be rectified.

But the court laid down no precise rule for the distribution of this stock ; it being sufficient upon this motion to dissolve an injunction, to adjudge, that the complainants are entitled to some stock, in virtue of their subscriptions.

BY an act of the legislature of the forty eighth session, chapter 117, page 198, a bank was incorporated, by the name of the President Directors and Company of the Commercial Bank of Albany. By the second section of the act, the defendants, thirteen persons, were appointed commissioners, and were authorized, " to receive subscriptions to the " said capital stock, on such a day and at such a place in the " city of Albany, as they shall appoint ; giving at least four- " teen days notice of such time and place for receiving such " subscriptions, in one of the newspapers printed in said ci- " ty ; and the book for subscriptions shall be kept open at " least three days ; and that the sum of three dollars on each

1825.

8th, 9th, 15th, 16th, and 17th August.

*Powers of commissioners under a special appointment by law.*

" share, shall be paid to the commissioners, on such subscrip-
" tions as they shall receive aforesaid ; and in case the whole
" of the stock should not be taken up on those days, then
" the said commissioners or a majority of them, are author-
" ized to receive farther subscriptions on such other day and
" at such place in the said city of Albany, as they shall from
" time to time appoint, until the whole capital stock of said
" corporation shall be taken up ; and it shall be lawful for
" the said corporation as soon as the capital stock shall be so
" subscribed, to commence the business of banking."

By the act, the capital stock of the bank, was to be three
hundred thousand dollars, in shares of twenty dollars each.

The act made no provision, for the event of an amount of
subscriptions, exceeding the capital stock.

A book for subscriptions was opened, and subscriptions
were received, according to the act ; and when the subscrip-
tions were closed, it was found, that they amounted to about
one million five hundred thousand dollars.

The complainants were some of the persons who had duly
subscribed for stock, and had paid the requisite deposites for
the shares which they had subscribed. The commissioners
proceeded to apportion the capital stock among the subscri-
bers ; and in doing so, allotted no stock to the complainants,
but returned their deposites.

Notice of an election of directors having been given, this
bill was filed against the commissioners, on the twenty fifth
day of July 1825. It embraced a great number of matters
not essential to the points of the decision now to be reported.
It stated among other things, that after the whole capital stock
had been subscribed, the commissioners themselves subscrib-
ed four hundred shares each : that after closing the books and
finding a large excess of subscriptions, they assumed to them-
selves the power of apportioning the capital stock among
each other, and among such persons and in such portions, as
suited their views and wishes : that they allotted the greater
part of it among certain favored subscribers, giving to some
all the shares for which they had subscribed, and to others a
large portion ; to the total exclusion of the complainants and
of many other subscribers : that they continued from time to

time, as suited their views and interest or convenience, to make allotments and distributions of stock among their favorites and friends, until the whole of the stock was distributed among about one hundred and seventy persons, out of six hundred and thirty persons, who were actual subscribers: and that in such distribution, the commissioners had observed no rule founded on the rights acquired by the subscribers; but had allotted the stock in an arbitrary, unjust and inequitable manner. The object of the bill was to restrain the defendants from holding an election of directors; to obtain a discovery of facts; to prevent the defendants from distributing or otherwise disposing of the stock in their own hands, until farther order; and for general relief. This bill being verified by oath, an injunction had been granted, according to its prayer.

The answer of the defendants admitted the most material of the alleged facts; except so far as those facts tended in any manner, to impute fraudulent or unfair conduct to the defendants. They admit, that after subscriptions for the whole capital stock, and after nearly all the other subscriptions had been made, they subscribed four hundred shares or more, each; which they insist they had a perfect right to do: that they had refused to allot any shares whatever to the complainants; that after closing the books and finding a large excess of subscriptions, they or a majority of them assumed to themselves the power, under a conviction that it was given by the act, to distribute the capital stock among each other, and among such other persons and in such portions, as suited their own views and wishes, their interest and convenience; but so as in their judgment, was also best calculated to promote the interest of the corporation, by making such persons stockholders, and to such extent, as would induce them to deal with the bank in deposites and loans: they deny, that they were influenced in this distribution, by any private, personal or sinister views: they say, that the allotment to themselves, was made because they with others, had associated to procure the charter, as an institution favorable to themselves and the public; and that they had spent much time and taken great pains, to effect the object: they admit, that in the allotments

of stock, preferences have been given to many persons who were their favorites and friends; and that no rule was observed therein, founded on any rights acquired by subscription; but they deny, that such allotments were made in an arbitrary, unjust and inequitable manner; and say, that the same were made in the exercise of their best discretion for the promotion of the interests of the corporation: they insist, that they were vested with a discretionary power, which they have exercised in such manner as seemed best calculated to promote the interest of the city of Albany and the community at large.

From the answer it appeared, that about two fifths of the capital stock of the bank, had been allotted by the commissioners to themselves and their partners in trade.

The defendants having answered, now moved to dissolve the injunction. This motion was argued at great length, by Mr. Spencer and Mr. Henry for the defendants, and Mr. Van Vechten and Mr. Butler for the complainants. The chief question, was, whether the apportionment of stock made by the commissioners, was subject to alteration or control by the court.

30th August.    The Chancellor held the case under consideration, until this time: when he delivered his opinion at large, and examined the various topics which had been urged by the counsel of the parties. His opinion was given orally; and the statement which follows, is merely a recapitulation of the principal propositions which he advanced and discussed, omitting the illustrations and reasoning, by which they were explained and supported.

The Chancellor. An excess of subscriptions beyond the limited amount of the capital of this bank, is a case, for which no provision is made, in the act of incorporation.

There must be a power to remove this excess of subscription; since otherwise, the statute would wholly fail.

This power then, results from necessity, and rests wholly, upon implication.

It seems to reside in the first instance, in the commission-

ers, as agents for organizing the bank : but it may devolve on the courts of justice ; and if the commissioners have exceeded their power, or have violated private rights, the courts are bound to give redress.

Every subscriber acquired a right by subscription and payment.

If there had been no excess of subscriptions, the right of each subscriber to the shares which he had subscribed, would have been absolute and perfect.

Had there been no excess, the agency of the commissioners would have been merely ministerial.

When this excess occurred, the office of these commissioners continuing to be ministerial in some respects, became also, a judicial trust, in respect to the allotment or disposition of shares among the subscribers.

When the commissioners are subscribers and they make a reduction or distribution, they act in effect, as judges in their own cause.

In the language of courts of equity, the commissioners are trustees charged with a trust for the benefit of all the subscribers.

The principle that no man can act as a judge in his own cause, and the rule that a trustee can derive no benefit from his trust, are applicable to this case, so far as rights of property are concerned.

This bank is a public institution ; but the stock is a subject of private property.

Where the legislature expressly confer discretionary power on subordinate agents, such power must prevail.

Such was the case of the Catskill bank ; where the commissioners appointed by law to receive subscriptions, were expressly authorized by the same law, to apportion the excess of shares among the subscribers, as they should judge discreet and proper. Haight against Day, 1 John, ch. 18. In such a case, nothing less than fraud, vitiates the acts of the agents.

But where the legislature are silent, and the power of subordinate agents is inferred, it is not a power merely arbitrary ; but it must be consistent with the principles of justice and equity. In such a case, either fraud or error in the exercise

of the power, subjects the case to the revision and control of the courts of justice.

When a power not expressly given to a subordinate agent, is inferred as necessary to an end, the courts of justice supplying in effect, the want of express law, must so define the power, that while it may attain the end, private rights may be preserved and protected.

In choosing means to an end, subordinate agents have not the latitude of legislative discretion.

As no rule of apportionment or principle of reduction, is given by this law, the commissioners are not perhaps, bound to adopt any particular and exact rule.

But as the power to reduce the subscriptions, is derived wholly from construction, the apportionment or distribution must be reasonable and equitable. The implied power must be governed by general principles of equity.

The power claimed and exercised by these commissioners, in effecting a reduction, is a power to exclude any subscriber, in their pleasure. Such an arbitrary power infringes the sense of this law, because it considers subscription and payment as giving no right whatever. It is partial and unjust in its operation, because, by large subscriptions and arbitrary preferences to particular subscribers, the whole stock of the corporation may be engrossed by a few persons.

Subscriptions can not be wholly disregarded in effecting the reduction.

The power raised by implication, can not be a power merely arbitrary in the commissioners: and though it is not here necessary to say, that they could take no stock to themselves, it is necessary to say, that they can not take all, or any inordinate proportion of the stock of this bank.

These commissioners have allotted to themselves and their mercantile partners, about two fifths of the whole capital of this bank.

This appropriation of so large a portion of the stock to themselves, is partial and unjust: and it is so, because it excludes other subscribers having equal rights.

If the commissioners had appropriated the whole or one half of the stock of this bank to themselves, the act would

have been partial and unjust, only because it would have excluded other subscribers: but other subscribers are now wholly excluded, by the appropriation of two fifths of the stock to the commissioners.

These commissioners by taking to themselves, so large a part of all the stock, have violated the rights of other subscribers.

This seems to have been done by the commissioners without any fraud on their part; but under a mistaken conception of the nature of their powers.

The commissioners have erred in supposing, that they possessed an arbitrary power to effect the reduction by an entire rejection of subscriptions; and they have observed no equitable rule, in their distribution.

The distribution made by the commissioners being plainly inequitable, the rights of the complainants as subscribers, have been infringed; and this distribution must be rectified.

In the present state of this cause, it is not necessary, to lay down any rule of apportionment; and it is sufficient to declare, that an apportionment more just and impartial, than the distribution made by the commissioners, can be made by the court.

But I regard the rule established in the case of the bank of the united states, as highly equitable, and fit to be applied to every such case of excess of subscriptions. By that rule, the excess of subscriptions is deducted from the largest subscriptions, in such manner, that no subscription is reduced, while any one remains larger. Second section of the act of the tenth day of April 1816, incorporating the bank of the united states.

The complainants have then, a right to some portion of the stock, for which they subscribed. As this right has been withheld; as a new apportionment of the stock must be made; and as the right of voting in the choice of directors, is one of the incidents of the stock, the injunction must be continued.